IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RONNIE WORLEY,

    Plaintiff,

v.                                       Case No. 2:19-cv-00543

DAVID EWING, et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss filed by defendants Joshua Ward, Jonathan Frame, Donald Ames, and Betsy Jividen [ECF No. 14]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this motion to the Magistrate Judge is **WITHDRAWN.**

I.    **The Plaintiff's Allegations and the Defendants' Motion to Dismiss.**

This matter is proceeding on the Amended Complaint [ECF No. 12], filed by the plaintiff, Ronnie Worley ("Worley"), on September 25, 2019. According to the Amended Complaint, on January 23, 2019, Worley was strip searched in his cell at the Mount Olive Correctional Complex ("MOCC") by correctional officers David Ewing ("Ewing") and Charles Johnson ("Johnson") prior to being escorted to the

medical unit for a pre-segregation assessment. Worley claims that the location of his cell left him in a direct line of site of the pod officer, the Unit Team office, exterior windows, [and] the front area of the pod." [*Id.* at 6]. When Worley complained that such exposure constituted a violation of Prison Rape Elimination Act ("PREA") standards, Ewing allegedly responded, "I don't give a f---. Nobody's even looking up here." [*Id.*]

Following the strip search, Ewing and Johnson applied mechanical restraints to Worley's hands behind his back, allegedly without engaging the double-locking mechanism, and then escorted him to the medical unit. [*Id.* at 7]. Worley alleges that, as they walked down the hallway, Ewing and Johnson made belittling and humiliating comments about him in front of other officers and inmates. [*Id.*] When Worley told him to "shut up," Ewing allegedly tightened his grip on Worley's right arm and said, "don't tell me to shut up you punk ass bitch." [*Id.*] Worley states that he turned his head to ask Ewing why he was using such language, and Ewing and Johnson "violently slammed him down into the mud and gravel." [*Id.* at 7-8].

Worley alleges that his head hit the gravel, cutting his left eyebrow, and causing ringing in his left ear. He further claims that "the defendant C.O.'s weight was placed on his lower back" causing "long-lasting injury" and the handcuffs "tightened to the point of numbness in his right hand," which has allegedly continued since that time. [*Id.* at 8]. Worley alleges that, when he arrived at the medical unit, he attempted to report this incident, but was told to "be quiet and go to your hearing."

[*Id.*] He further suggests that Ewing and Johnson falsified their subsequent incident reports. [*Id.* at 6].

Worley claims that the defendants' conduct violated his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and PREA. In addition to Ewing and Johnson, the Amended Complaint names as defendants Major Joshua Ward, Chief of Security at MOCC ("Ward"); Jonathan Frame, Associate Superintendent of Security at MOCC ("Frame"); Donald Ames, Superintendent of MOCC ("Ames"); and Betsy Jividen, Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR") ("Jividen"). However, he does not allege that any of them were personally involved in the events of January 23, 2019.

Rather, he claims that Frame and Ward, as supervisors of Ewing and Johnson, knew or should have known that their subordinates had engaged in a pattern or practice of misconduct, including use of excessive force, submission of fraudulent incident reports, and violation of policy directives and PREA standards, and that Frame and Ward failed to investigate this misconduct and failed to properly train, supervise, and discipline their officers. [*Id.* at 11]. Beyond identifying their titles, and a general statement that they are "legally responsible" for the overall operations of MOCC and the WVDCR, the Amended Complaint contains no allegations whatsoever concerning specific conduct by Ames and Jividen. Worley seeks monetary damages, a declaratory judgment, and injunctive relief in the form of requiring the video recording of all instances where inmates at MOCC are restrained and escorted about the prison. [*Id.* at 12].

The defendants' Motion to Dismiss asserts that Ward, Frame, Ames, and Jividen, in their official capacities, are not "persons" who can be sued under 42 U.S.C. § 1983 and are further entitled to sovereign immunity under the Eleventh Amendment. Additionally, the Motion to Dismiss contends that the Amended Complaint fails to state a claim upon which relief can be granted against these defendants in their individual capacities and that they are entitled to qualified immunity on Worley's claims against them. These defendants further assert that Worley failed to exhaust the available administrative remedies with respect to his claims against them. Worley responded to the Motion to Dismiss [ECF No. 19] and the defendants filed a reply [ECF No. 22]. The motion is ripe for adjudication.

## II. Standard of Review

The defendants' motion is filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

Additionally, the defendants' motion asserts that, to the extent that the official capacity claims against them may not proceed based upon the sovereign immunity granted by the Eleventh Amendment, those claims are entitled to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6), but the recent trend appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Jeffers v. W. Va. Div. of Corr. & Rehab.*, No. 3:19-cv-0462, 2020 WL 521851, at *3 (S.D. W. Va. Jan. 31, 2020), citing *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *3 (S.D. W. Va. July 12, 2013) (internal quotation marks and citations omitted).

III. Discussion

    A. Official Capacity Claims and Sovereign Immunity

Worley's Amended Complaint specifies that he is suing each defendant in both their official and individual capacities. However, an individual who is employed by

5

an arm of the State and sued in his official capacity is immune from suit in federal court under the Eleventh Amendment. *Fauconier v. Clarke*, No. 18-6489, 2020 WL 4046025, *8-9 (4th Cir. Jul. 20, 2020); *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 250 (4th Cir. 2016), *as amended* (July 8, 2016). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Such immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Id.*; *see also Hans v. Louisiana*, 134 U.S. 1, 9 (1980).

Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties, such as Worley, seeking to impose monetary liability upon a state or state officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

Furthermore, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that a state, its agencies, and its officials acting in their official capacity, are not "persons" under 42 U.S.C. § 1983. The vehicle for asserting Worley's claims in federal court is § 1983. Thus, the defendants, in their official

capacities, are not persons who can be sued thereunder. Accordingly, I **FIND** that dismissal of all claims against the defendants in their official capacities is warranted.

### B. Individual Capacity Claims and Qualified Immunity

Worley's claims against these defendants are asserted as claims of supervisory liability. Worley essentially alleges that Ward, Frame, Ames, and Jividen, as Ewing and Johnson's supervisors, should be held liable for their conduct. The Fourth Circuit has firmly held that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). However, the burden of proof on a supervisory liability claim is weighty. *Iqbal*, 556 U.S. at 677.

"Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Iqbal*, 556 U.S. at 677 ("[i]n the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required..."). Three elements are necessary to establish supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

7

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To establish the first element, a plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

The second element may be established "by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted). The plaintiff assumes a "heavy burden of proof" because he "cannot satisfy his burden [] by pointing to a single incident or isolated incidents." *Id.* The third element is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citations omitted). Causation in this context encompasses both cause in fact and proximate cause. *Id.*

Worley's Amended Complaint does not plausibly connect, to the extent necessary to demonstrate "tacit authorization," the conduct of these defendants to the alleged constitutional violations by Ewing and Johnson.[1] *See Slakan*, 737 F.2d at 372.

---

[1] To the extent that Worley's Amended Complaint alleges that the defendants violated PREA standards, such allegations are insufficient to support a plausible claim for relief because there is no private cause of action under § 1983 to enforce a PREA violation. *Payne v. Thomas*, No. CV JKB-18-3418, 2020 WL 886600, at *3 (D. Md. Feb. 24, 2020); *Williams v. Dovey*, Civ. No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) ("Nothing in the PREA suggests that Congress intended to

8

Worley does not plausibly allege that any of these defendants had prior knowledge of widespread abuses by defendants Ewing and Johnson at MOCC, and simply alleging that these defendants failed to investigate grievances, as he asserts against Ames and Jividen, is insufficient. *See Green v. Beck*, 539 F. App'x 78, 81 (4th Cir. 2013) (finding an alleged failure of supervisory officials to investigate grievances was not sufficient to establish liability under § 1983).

Moreover, although his response to the motion to dismiss summarily asserts that Ward, Frame, Ames, and Jividen were aware that "this particular series of events is not an isolated incident" and that "individual officers had routinely engaged in a pattern of, and practice of, misconduct," he fails to provide specific factual allegations to establish a basis for supervisory liability on the part of these four defendants. Rather, his Amended Complaint insufficiently relies solely on his own incident and bald, unsupported assertions of widespread misconduct. *See, e.g., Myers v. City of Charleston*, No. 2:19-CV-00757, 2020 WL 4195005, at *7 (S.D.W. Va. July 21, 2020) (dismissing supervisory liability claim where plaintiffs failed to plead specific facts concerning "repeated acts of misconduct"); *Young v. Muncy*, No. 2:19-cv-00829, 2020 WL 1521799 at *5 (S.D. W. Va. Mar. 30, 2020) (quoting *Shaw*, 13 F.3d at 799) ("the plaintiff 'cannot satisfy his burden [] by pointing to a single incident or

---

create a private right of action for inmates to sue prison officials for noncompliance with the Act."); *Chinnici v. Edwards*, Civ. No. JGM-07-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights.").

9

isolated incidents.'"). These are precisely the type of conclusory allegations that the Supreme Court found to be proper for dismissal in *Iqbal* and *Twombly*.

The defendants' Motion to Dismiss further asserts that these defendants are entitled to qualified immunity on all of Worley's claim against them. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020); *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Because Worley's Amended Complaint fails to state a plausible violation of any clearly established constitutional right by these defendants, I **FIND** that they are entitled to qualified immunity on Worley's claims against them.[2]

---

[2] Because I have found that the Amended Complaint fails to state plausible claims for relief against these defendants, I find it unnecessary to address their arguments concerning exhaustion of administrative remedies and the appropriateness of injunctive relief.

10

## IV. Conclusion

For the reasons stated herein, I **FIND** that Worley's Amended Complaint fails to state any claim upon which relief can be granted against defendants Frame, Ward, Ames, and Jividen, and the claims against them are ripe for dismissal. Accordingly, it is hereby **ORDERED** that the Motion to Dismiss filed by defendants Joshua Ward, Jonathan Frame, Donald Ames, and Betsy Jividen (ECF No. 14) is **GRANTED**. However, this matter shall remain referred to the Magistrate Judge for additional proceedings concerning the claims against defendants David Ewing and Charles Johnson.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: August 12, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE