IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RONNIE WORLEY,

    Plaintiff,

v.                                          Case No. 2:19-cv-00543

DAVID EWING, et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are the Motions to Dismiss filed by defendants David Ewing [ECF No. 32] and Charles Johnston (who was incorrectly identified in the Amended Complaint as "Charles Johnson") [ECF No. 46]. By Standing Order, this matter was referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of these motions to the Magistrate Judge is **WITHDRAWN** and the undersigned will proceed to rule thereon.

I.    **The Plaintiff's Allegations and the Defendants' Motions to Dismiss.**

This matter is proceeding on the Amended Complaint [ECF No. 12], filed by the plaintiff, Ronnie Worley ("Worley"), on September 25, 2019. According to the Amended Complaint, on January 23, 2019, Worley was strip searched in his cell at the Mount Olive Correctional Complex ("MOCC") by correctional officers David

Ewing ("Ewing") and Charles Johnston ("Johnston") prior to being escorted to the medical unit for a pre-segregation assessment. Worley claims that the location of his cell "left him in a direct line of site to the pod officer, the Unit Team office, exterior windows, [and] the front area of the pod" while he was strip searched. [*Id.* at 6]. When Worley complained that such exposure constituted a violation of the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301 *et seq.*, standards, Ewing allegedly responded, "I don't give a f---. Nobody's even looking up here." [*Id.*]

Following the strip search, Ewing and Johnston applied mechanical restraints to Worley's hands behind his back, allegedly without engaging the double-locking mechanism, and then escorted him to the medical unit. [*Id.* at 7]. Worley alleges that, as they walked down the hallway, Ewing and Johnston made belittling and humiliating comments about him in front of other officers and inmates. [*Id.*] When Worley told him to "shut up," Ewing allegedly tightened his grip on Worley's right arm and said, "don't tell me to shut up you punk ass bitch." [*Id.*] Worley states that when he turned his head to ask Ewing why he was using such language, Ewing and Johnston "violently slammed him down into the mud and gravel." [*Id.* at 7-8].

Worley alleges that his head hit the gravel, cutting his left eyebrow, and causing ringing in his left ear. He further claims that "the defendant C.O.'s [believed to be Ewing] weight was placed on his lower back" causing "long-lasting injury" and that the handcuffs "tightened to the point of numbness in his right hand," which has allegedly continued since that time. [*Id.* at 8]. Worley alleges that, when he arrived at the medical unit, he attempted to report this incident, but was told to "be quiet and

go to your hearing." [*Id.*] He further suggests that Ewing and Johnston falsified their subsequent incident reports. [*Id.* at 6]. His Amended Complaint further states:

> The two corrections officers . . . (a) violated the Prison Rape Elimination Act (PREA) standards prior to placing the Plaintiff into custody; (b) verbally abused the Plaintiff; (c) employed unreasonable and excessive force while maintaining custody of the Plaintiff; and (d) composed fraudulent incident reports in an attempt to validate their actions, all in violation of Plaintiff's rights under the Fifth, Eighth, [and] Fourteenth Amendments and the PREA standards.

[*Id.* at 6].[1]

The defendants' motions to dismiss assert that, in their official capacities, they are not "persons" who can be sued under 42 U.S.C. § 1983 and are further entitled to sovereign immunity under the Eleventh Amendment. Additionally, the defendants contend that the Amended Complaint fails to state any plausible claim upon which relief can be granted against them in their individual capacities and that they are entitled to qualified immunity on Worley's claims against them. Worley responded to each motion [ECF Nos. 40 and 49] and the defendants each filed a reply [ECF Nos. 41 and 50]. The motions are ripe for adjudication.

## II. Standards of Review

### A. Motions to dismiss under Rule 12(b)(1) and 12(b)(6).

The defendants' motions are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the

---

[1] The Amended Complaint also contained claims against various supervisory officials which were dismissed by Memorandum Opinion and Order entered on August 12, 2020. [ECF No. 34].

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

Additionally, "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6), [of the Federal Rules of Civil Procedure], but the recent trend appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Jeffers v. W. Va. Div. of Corr. & Rehab.*, No. 3:19-cv-0462, 2020 WL 521851, at *3 (S.D. W. Va. Jan. 31, 2020), citing *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *3 (S.D. W. Va. July 12, 2013) (internal quotation marks and citations omitted).

4

> Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject-matter jurisdiction. *See Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A defendant may challenge subject matter jurisdiction facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. *See id.* The court then effectively affords a plaintiff "'the same procedural protection as he would receive under a rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. *Kerns*, 585 F.3d at 192-93.

*Mitchell v. Winston-Salem State Univ.*, No. 1:19-cv-130, 2020 WL 1516537, at *5 (M.D.N.C. Mar. 30, 2020). Thus, although not specifically pled by the defendants, the court will address their argument for dismissal as a Rule 12(b)(1) facial challenge as well.

### B. Qualified immunity.

The defendants' motions to dismiss further assert that these defendants are entitled to qualified immunity on all of Worley's claim against them. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020); *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly

5

established such that a reasonable person would have known that their conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538-39 (4th Cir. 2017). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

"To determine if the right in question was clearly established, we first look to cases from the Supreme Court, this Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 99 (4th Cir. 2017) (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)). Absent "directly on-point, binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Booker*, 855 F.3d at 543; *Owens*, 372 F.3d at 279 ("[T]he absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity.") The "nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity [because] 'qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations.'" *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (quoting *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (Michael, J. concurring)); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

## III. Discussion

### A. Official Capacity Claims and Sovereign Immunity

Worley's Amended Complaint specifies that he is suing each defendant in both their official and individual capacities. However, an individual who is employed by an arm of the State and sued in his official capacity is immune from suit in federal court under the Eleventh Amendment. *Fauconier v. Clarke*, No. 18-6489, 2020 WL 4046025, *8-9 (4th Cir. July 20, 2020); *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 250 (4th Cir. 2016), *as amended* (July 8, 2016). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Such immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Id.*; *see also Hans v. Louisiana*, 134 U.S. 1, 9 (1890).

Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties, such as Worley, seeking to impose monetary liability upon a state or state officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). The defendants, in their official capacities, are entitled to Eleventh Amendment immunity.

Furthermore, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that a state, its agencies, and its officials acting in their official capacity, are not "persons" under 42 U.S.C. § 1983. The vehicle for asserting Worley's claims in federal court is § 1983. Thus, the defendants, in their official capacities, are not persons who can be sued thereunder. Accordingly, on the face of the Amended Complaint, I **FIND** that dismissal of all claims against the defendants in their official capacities is warranted.

### B. Individual Capacity Claims and Qualified Immunity

#### 1. *Alleged PREA violation*

To the extent that Worley's Amended Complaint alleges that the defendants violated "PREA standards" when they allegedly forced him to undergo a strip search in the line of sight of other individuals, such allegations are insufficient to support a plausible claim for relief because there is no private cause of action under § 1983 to enforce a PREA violation. PREA is a federal law designed to reduce incidents of sexual misconduct in our nation's correctional facilities through federal funding and educational initiatives. It requires corrections and law enforcement agencies to enhance education, investigation, protection, prevention, and prosecution of sexual offenses. In 2012, the U.S. Department of Justice published national PREA standards for all prisons, jails, lockups, and detention facilities in the United States. However, these provisions do not create any private right of action for prisoners to sue correctional staff for alleged sexual misconduct. *See, e.g., Payne v. Thomas*, No. CV JKB-18-3418, 2020 WL 886600, at *3 (D. Md. Feb. 24, 2020); *Williams v. Dovey*,

Civ. No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) ("Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."); *Chinnici v. Edwards*, Civ. No. JGM-07-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights."). Thus, Plaintiff's Amended Complaint fails to state a plausible claim upon which relief can be granted on this basis.

    2.    *Fifth and Fourteenth Amendment claims*

To the extent that Worley's Amended Complaint cites to the Fifth and Fourteenth Amendments, it is presumed that he is referring to the due process clauses contained in each amendment. However, the Fifth Amendment is not implicated because its due process clause only pertains to conduct taken by federal officials. *See Peoples v. Schwarzenegger*, 402 F. App'x 204, 205 (9th Cir. 2010) (the Fifth Amendment's Due Process and Equal Protection Clauses apply only to the federal government, not to state actors); *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (holding that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."); *Young v. Dzurenda*, No. 219-cv-01235JADEJY, 2020 WL 3840555, at *2 (D. Nev. July 8, 2020) (same). Because Worley was a sentenced state prisoner at the time of the

conduct in question, his due process claims, if any, are governed instead by the Fourteenth Amendment.

The Fourteenth Amendment's due process clause prohibits a state from depriving any person of "life, liberty, or property without due process of law." U.S. CONST., Amend. XIV. "The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action." *Wright v. Corpening*, No. 1:18-cv-332-FDW, 2019 WL 1332379, at *5 (W.D.N.C. Mar. 25, 2019) (citing *Tigrett v. Rector and Visitors of the Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). Absent such a protected interest, a prisoner has no federal right to particular due process protections. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (noting substantive requirement for prison discipline proceedings implicating the Due Process Clause); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (noting the same about procedural requirements). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone*, 855 F.2d at 172.

Here, Worley has not sufficiently pled that the defendants' conduct denied him a protected liberty or property interest. At best, Worley summarily alleges that Ewing and Johnston "composed fraudulent incident reports in an attempt to validate their actions" and that he "was placed in isolated segregation for an extended period

of time." [ECF No. 12 at 6, 9]. Even liberally construing those allegations to be asserting that Worley was placed in segregation because of the defendants' alleged false incident reports, Worley has not sufficiently established the deprivation of a protected interest that would give rise to due process requirements.

Prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. Thus, unless a prison disciplinary penalty causes an inmate's original sentence to be enhanced, protected interests are generally limited to "freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

Ewing's memorandum of law in support of his motion to dismiss asserts that "Plaintiff alleges no facts asserting that Defendant David Ewing violated Plaintiff's Fifth or Fourteenth Amendment rights nor how Defendant David Ewing plausibly could have." [ECF No. 33 at 4]. Defendant Johnston's memorandum makes the same assertion. [ECF No. 47 at 4]. The undersigned agrees. Even under a liberal construction, Worley's Amended Complaint does not contain any allegations that his segregated confinement posed an atypical and significant hardship.

11

Worley's responses to the defendants' motions fail to address his alleged due process claims in any way. Thus, the defendants' assertion that the Amended Complaint fails to state a plausible Fifth or Fourteenth Amendment claim is undisputed. The undersigned agrees that Worley's Amended Complaint fails to state a plausible due process claim under either the Fifth or Fourteenth Amendments of the United States Constitution and that such claims must be dismissed under Rule 12(b)(6).

### 3. *Eighth Amendment claims*

Worley's claim concerning the excessive use of force by the defendants is most appropriately addressed under the Eighth Amendment's prohibition on cruel and unusual punishment.[2] The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on prisoners. *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013). To succeed on an Eighth Amendment claim, the plaintiff must establish that "the prison official acted with a sufficiently culpable state of mind (subjective component)" and that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). The objective component is "contextual and responsive to

---

[2] The court construes this claim as only being brought under the Eighth Amendment. However, if Worley intended to raise a separate claim under the due process clause of the Fourteenth Amendment arising out of the defendants' use of force against him, the law is well-settled that, where a claim for relief is governed by a more specific protection, such as that of the Eighth Amendment's guarantee against cruel and unusual punishment, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). In *Graham*, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395.

contemporary standards of decency," and is always satisfied "[w]hen prison officials maliciously and sadistically use force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 (1992) (internal quotation marks omitted). Thus, *Hudson* held that use of excessive physical force against an inmate may constitute cruel and unusual punishment in violation of the Eighth Amendment even when the inmate does not suffer serious injury.

The subjective component, on the other hand, requires a showing that the defendant prison official acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). The Supreme Court has identified four factors that must be weighed in making this determination: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the threat reasonably perceived by the responsible official; and (4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see also Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996). The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320. The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve

13

internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547). Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322.

The defendants' motions focus on the subjective component, asserting that Worley has failed to plead facts sufficient to support a finding that they acted with "wantonness in the infliction of pain" or "maliciously and sadistically to cause harm." [ECF No. 33 at 7-8; ECF No. 47 at 8]. Thus, the defendants contend that the Amended Complaint also fails to state a plausible Eighth Amendment claim against them and that they are entitled to qualified immunity thereon.

Plaintiff's responses assert that the defendants acted maliciously and sadistically and without provocation. [ECF No. 40 at 2; ECF No.49 at 2]. His response to defendant Johnston's motion further asserts:

> Both Defendants were speaking to Petitioner in a threatening manner, demeaning the Petitioner, attempting to demoralize the Petitioner, and demonstrating their intentions through the language they used through the entire incident.

[ECF No. 49 at 2].

As noted by the defendants, in an effort to save his claims, Worley's responses improperly attempt to rely on video footage and other extrinsic evidence that is not proper for consideration at the motion to dismiss stage. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) ("The purpose of Rule 12(b)(6) is to test

14

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). [ECF Nos. 41 at 2-5; ECF No. 50 at 3-5]. Defendant Johnston's reply further disputes that the Amended Complaint contains any allegations that the defendants threatened Worley or spoke to him in a demeaning manner. [ECF No. 50 at 5].[3]

Nonetheless, taking the allegations in the Amended Complaint as true and in the light most favorable to Worley, the court finds that there are sufficient facts to support an Eighth Amendment excessive force claim. As the defendants have essentially conceded the objective component in this case, the court presumes that prong is met here. *See Brooks v. Johnson,* 924 F.3d 104, 112 (4th Cir. 2019) (meeting the objective component of an Eighth Amendment excessive force claim "is not a high bar" and requires only the "nontrivial" application of force); *Canterbury v. Adkins*, No. 3:18-cv-01530, 2020 WL 1891687, at *10 (S. D. W. Va. Jan. 9, 2020), *report and recommendation adopted*, No. 3:18-cv-01530, 2020 WL 901813 (S. D. W. Va. Feb. 25, 2020).

Turning to the subjective prong, Worley alleges that the defendants failed to engage the double-locking mechanism on his mechanical restraints, permitting them

---

[3] As further noted by Johnston's reply, Worley's response to his motion also appears to be improperly asserting, for the first time, a new Eighth Amendment deliberate indifference claim against Ewing and Johnston, or improperly relying upon legal authority concerning such claims to support his excessive force claims. [ECF No. 50 at 3-5]. There are insufficient allegations in the Amended Complaint to support a deliberate indifference claim against these defendants and Worley may not amend his complaint through a response to a motion to dismiss. *See Mylan Labs., Inc. v. Akzo, N.V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that the plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

to further tighten on his wrists, causing injury. He further claims that the defendants repeatedly told him to shut up and used other derogatory language about him, including calling him a "cry baby" and a "punk ass bitch," while Ewing tightened his grip on his elbow, and then Ewing and Johnston "violently slammed him into the mud and gravel" for merely turning his head to speak to Ewing. Worley further claims that one of the correctional officers (believed to be Ewing) placed weight on his lower back to hold him down while he was restrained. Worley claims that this conduct caused bruising and abrasions on his head, hands, and wrists; ringing in his left ear; continual numbness in his right hand; severe pain in his left ribcage; and severe and lingering back pain.

While verbal abuse alone would be insufficient to establish an Eighth Amendment violation, *see, e.g., Hill v. Rose*, No. 5:18-cv-1535, 2019 WL 2896597 (S.D. W. Va. June 10, 2019) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)); *Lindsey v. O'Connor*, 327 F. App'x 319, 2009 WL 1316087, (3d Cir. May 13, 2009) (holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"), Worley's allegations of contemporaneous physical and verbal abuse while he was restrained and allegedly compliant, exhibit wantonness in the infliction of pain. These allegations, taken as a whole and as true, are sufficient to state a plausible Eighth Amendment claim warranting further development. *See, e.g., Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 99 (4th Cir. 2017) (where no justification is present, Eighth Amendment claim alleging defendant repeatedly threw inmate against wall and floor of van permitted to proceed); *Wright v. Gess*, No.

18-cv-03338-STV, 2019 WL 4464142, at *5 (D. Colo. Sept. 18, 2019) (allegation that defendant threw compliant inmate to floor could reasonably support a finding that defendant acted maliciously and sadistically to cause harm); *Figures v. Hale*, No. 3:19-cv-00728, 2020 WL 2950414, at *11 (S. D. W. Va. May 6, 2020), *report and recommendation adopted*, No. 3:19-cv-0728, 2020 WL 2949783 (S.D. W. Va. June 3, 2020) (denying motion to dismiss concerning allegations that a correctional officer slammed non-resisting, restrained inmate's head to the ground); *Carmona v. Bullard*, No. 3:18-cv-492-FDW, 2018 WL 5793156, at *3 (W.D.N.C. Nov. 5, 2018) (allowing claim that defendant threw inmate headfirst to ground, and later into cell, to continue after initial screening).

Having found that Worley has sufficiently alleged an Eighth Amendment violation, the court further finds that Ewing and Johnston are not entitled to qualified immunity because, at the time in question, it was clearly established that an officer may not use unnecessary physical force against a restrained inmate who is compliant and not resisting. *See, e.g., Thompson, supra,* 878 F.3d at 105 ("As is apparent from the case law of eleven federal courts of appeals, the Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order. That principle applies with particular clarity to cases such as this one, where the victim is restrained, allegedly compliant, and incapable of resisting or protecting himself, and

17

otherwise presents no physical threat in any way."); *see also Wernert v. Green*, 419 F. App'x 337, 340 (4th Cir. 2011) ("takedown" of plaintiff that was "wanton" and "unnecessary," rather than "a good faith effort to maintain and restore discipline," constituted a constitutional violation); *Murray v. Lilly*, 426 F. Supp. 3d 245 (S.D. W. Va. Sept. 26, 2019) (finding clearly established law and denying qualified immunity on excessive force claim by allegedly compliant, restrained inmate); *Nosewicz v. Janosco*, 754 F. App'x 725 (10th Cir. 2018) (reversing grant of summary judgment based upon qualified immunity where angry but non-resisting inmate was slammed into a cinderblock wall, causing fractured ribs and lacerated elbow); *Wright, supra*, 2019 WL 4464142, at *6 (concluding that the law was clearly established that a correctional officer could not, unprovoked, shove a handcuffed, non-resisting inmate to the ground, from behind).

If Worley's version of events is taken as true, then the need for the use of force by Ewing and Johnston was not apparent, and therefore, a reasonable factfinder could determine that the amount of force used by them was excessive under the circumstances, which could support a finding that the conduct was malicious and sadistic with a purpose to cause harm, and not to restore order. Thus, the court finds that the Amended Complaint sufficiently states plausible Eighth Amendment claims against defendants Ewing and Johnston and that they are not presently entitled to qualified immunity.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that the Motions to Dismiss filed by defendants Ewing and Johnston [ECF Nos. 32 and 46] are **GRANTED in part** with respect to Worley's alleged Fifth and Fourteenth Amendment and PREA-based claims, but **DENIED in part** with respect to his Eighth Amendment claims. This matter is again referred to Magistrate Judge Tinsley for additional proceedings concerning the Eighth Amendment claims against the defendants.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 12, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE