IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RONNIE WORLEY,

    Plaintiff,

v.                                Case No. 2:19-cv-00543

DAVID EWING and CHARLES JOHNSTON,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

    This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Defendants' Motion for Summary Judgment (ECF No. 56), to which Plaintiff has responded (ECF No. 60) and Defendants have replied (ECF No. 61). Also pending is Plaintiff's Motion for Temporary Injunction (ECF No. 66), in which Plaintiff appears to request that the court issue an order freezing Defendant David Ewing's assets to ensure that he has sufficient assets to pay a money judgment in this matter. Defendants responded to the motion for temporary injunction (ECF No. 67) and both motions are ripe for review.

    *I.*    *FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY*

    This matter is now proceeding only on an Eighth Amendment excessive force claim against Defendants David Ewing ("Ewing") and Charles Johnston ("Johnston")

(collectively "Defendants") as set forth in Plaintiff's Amended Complaint (ECF No. 12).[1] Plaintiff alleges that, on January 23, 2019, Defendants made humiliating comments about him in the presence of other inmates and correctional staff as they were escorting him to the medical unit. (*Id.* at 7-8). He further alleges that, when he told Defendants to shut up that Ewing tightened his grip on Plaintiff and made a threatening and derogatory statement. (*Id.*) Plaintiff admits that he turned his head to face Defendants who then violently slammed him down into the mud and gravel. (*Id.*) Plaintiff further alleges that one or both of the Defendants placed their body weight on Plaintiff's lower back, causing "long-lasting" pain, and that his handcuffs, which had not been double-locked by Johnston when he applied them, tightened and caused lingering numbness in Plaintiff's right hand. (*Id.* at 8).

On March 24, 2021, Defendants filed the instant Motion for Summary Judgment (ECF No. 56) and Memorandum of Law in support thereof (ECF No. 57) asserting that Plaintiff failed to exhaust the available prison administrative remedies before filing his complaint. Defendants assert that neither of the two grievances Plaintiff attached to his amended complaint were fully exhausted and neither specifically concerned the alleged excessive use of force by Defendants. (*Id.* at 4-6).

After being advised, pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right and obligation to respond to Defendants' motion (ECF No. 58 at 3-4), on March 31, 2021, Plaintiff filed a response thereto (ECF No. 60). Concerning the threshold exhaustion issue, Plaintiff asserts that the prison

---

[1] Plaintiff's claims against Defendants Ames, Frame, Jividen, and Ward and his claim against Defendants Ewing and Johnston raised under the Prison Rape Elimination Act ("PREA"), the Fifth and Fourteenth Amendments, and all claims brought against them in their official capacities, were previously dismissed by the presiding District Judge. (ECF Nos. 34 and 51). Thus, only Plaintiff's Eighth Amendment excessive force claim against Ewing and Johnston remains.

administration chose to ignore his verbal complaints and disregarded the facts contained in the body of his written grievance. Thus, he contends that he "did everything within his power to find resolution to this issue prior to litigation." (*Id*. at 6). Otherwise, Plaintiff's response addresses the merits of his Eighth Amendment claim and continues to focus on other claims previously dismissed by the court.

On April 12, 2021, Defendants filed a reply brief emphasizing that Plaintiff's grievances were, at best, only tangentially related to the alleged use of excessive force during the January 23, 2019 incident, and that the grievances were rejected on appeal, such that they did not properly exhaust the available administrative remedies concerning his Eighth Amendment excessive force claim against Defendants. (ECF No. 61 at 1-2). The undersigned will address these arguments below.

### III.   DISCUSSION

*A.   Defendants' motion for summary judgment.*

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id*. (quoting *Anderson*, 477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, the court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. V. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

Defendants' motion for summary judgment is grounded in Plaintiff's failure to properly exhaust the prison's administrative remedy process concerning his excessive force claim. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which contains the administrative remedy exhaustion requirement, was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*

4

*v. Nussle*, 534 U.S. 516, 532 (2002). Such exhaustion is mandatory regardless of the type of relief sought or offered through the administrative procedures and so long as the grievance tribunal has authority to take some responsive action. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D.W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the

>   Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

In accordance with W. Va. Code § 25-1A-2. the West Virginia Division of Corrections and Rehabilitation ("WVDCR") has instituted uniform procedures for filing an inmate grievance, which are found in Policy Directive 335.00. If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." *Miller v. Rubenstein*, No. 2:16-cv-05637, 2018 WL 736044, at *5 (S.D.W. Va. Feb. 6, 2018) (citing Policy Directive 335.00 § (V)(D)(4)). The procedure for filing an inmate grievance is as follows: An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. The unit manager is required to return an answer to the grievance back to the inmate within five days. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review. Furthermore, except for grievances rejected as having been previously addressed in a prior grievance or those filed beyond the applicable time limits, "the inmate shall have five (5) days to correct the defect and re-file a new grievance."

Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." "The Warden/Administrator shall respond to the appeal . . . within five (5)

days." Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed. The Commissioner is allotted ten days to respond to the appeal. *Id.* (quoting Policy Directive 335.00). Policy Directive 335.00 specifically states that, "'[e]xhaustion' shall mean submitting an accepted grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner. Rejections do not constitute exhaustion. The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies." *Id.* (quoting Policy Directive 335.00(V)(A)(5)).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved by the court before reaching the merits of the underlying claims for relief. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

In *Ross v. Blake*, 578 U.S. 632, 642 (2016), the Supreme Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies. An

inmate . . . need not exhaust unavailable remedies." *Id.* The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" (*Id.* at 1859, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *4 (S.D.W. Va. Sept. 12, 2017). Whether an administrative remedy has been properly exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Id.* at 3.

Here, Defendants assert that the two grievances Plaintiff attached to his amended complaint, which appear to be the only relevant grievances, fail to demonstrate exhaustion concerning his Eighth Amendment excessive force claim. The first grievance, No. 19-MOC-Q1-49, dated January 25, 2019, was related to an alleged PREA violation stemming from a strip search of Plaintiff on January 23, 2019. This grievance makes no reference to any use of force, and it was not appealed to the Warden or the Commissioner.

The second grievance, No. 19-MOC-Q1-50, also dated January 25, 2019, requested the "dismissal of fraudulent accusations" resulting in disciplinary action against Plaintiff and the preservation of all video footage that captured the January 23, 2019 incident with Ewing and Johnston. However, that grievance was rejected by the Warden on February 11, 2019, with a finding that "Disciplinary matters are not addressed through the grievance procedure." The grievance did not seek redress for any use of force by Defendants, but only challenged a disciplinary write-up stemming therefrom. The grievance was then rejected by the Commissioner. Consequently, the issues addressed in that grievance were not properly exhausted. Plaintiff appears to claim that the administration misconstrued the scope of the issues raised in this second grievance.

However, following its rejection by the Warden, Plaintiff failed to re-submit the grievance within the allotted timeframe to do so in an effort to cure the perceived procedural errors or to clarify the claims he was making in the grievance and, in accordance with the policy directive, his appeal of the rejection did not exhaust his administrative remedies of any substantive excessive force claim.

It is apparent from the face of these grievances that Plaintiff's excessive force claim was not properly exhausted prior to the filing of the instant suit. Moreover, to the extent that his response relies on *Ross*, Plaintiff has not demonstrated that the administrative remedy process was unavailable to him in the instant case.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the evidence of record fails to demonstrate that Plaintiff timely and properly exhausted the available administrative remedies concerning the alleged use of excessive force against him by Defendants and that Plaintiff has failed to demonstrate that such administrative remedies were unavailable to him. Because Plaintiff failed to properly exhaust his administrative remedies concerning any of his remaining claims for relief, this court cannot review the merits thereof, and the Eighth Amendment claim against Defendants must be dismissed as a matter of law pursuant to 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2.

  B. *Plaintiff's motion for temporary injunction.*

Plaintiff has filed a motion for preliminary injunctive relief in the form of an order essentially freezing Ewing's assets or otherwise ensuring that he has sufficient assets to pay a money judgment in this matter. Plaintiff's motion is based solely on Ewing's alleged relocation to the State of Florida, which Plaintiff characterizes as "an attempt to avoid personal responsibility" and provides no other plausible basis for his request.

As noted by Defendants' response, "[a] plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009) (hereinafter "*Real Truth I*"), *vacated on other grounds*, 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), *reissued as to Parts I &II, Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010); *Williams v. Rigg*, 458 F. Supp.3d 468, 474 (S.D.W. Va. 2020). "All four elements must be established by a 'clear showing' before the injunction will issue." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D.W. Va. 2014) (quoting *Real Truth I*, 575 F.3d at 346). Furthermore, the plaintiff bears the burden of showing a "sufficient factual basis" for granting the injunction "beyond the unverified allegations in the pleadings." *Id.* at 868-69 (citations omitted).

In light of the recommended dismissal of this civil action due to Plaintiff's failure to exhaust administrative remedies and Plaintiff's bare and unsupported allegations concerning Ewing's financial circumstances and motivation for relocation from West Virginia, Plaintiff has not demonstrated a likelihood of success on the merits or that he will be irreparably harmed without the requested relief. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not made a clear showing of a right to preliminary injunctive relief in this matter, and his motion should be denied.

### IV.   RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Motion for Temporary Injunction (ECF No.

66), **GRANT** Defendants' Motion for Summary Judgment (ECF No. 56,) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985)*; United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing parties and Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

November 18, 2021

Dwane L. Tinsley
United States Magistrate Judge